# JOHN W. DOUGHERTY, Respondent, v. ABRAHAM C. SNYDER, Appellant.

### Kansas City Court of Appeals, January 5, 1903.

1. **Trial Practice: TWO COUNTS IN PETITION: FINDING ON ONE.** · Where there are two counts in the petition and the verdict is for the plaintiff on one count, silence as to the other count is in effect a finding for the defendant.

2. **False Imprisonment: INFORMATION OF INSANITY: EVIDENCE: THREATS.** In an information filed in the probate court as to plaintiff's insanity, it was stated that he had threatened the life of the defendant. Subsequently plaintiff sued defendant for false imprisonment under a warrant issued on the information by the probate judge. *Held*, it was error on the trial not to permit the plaintiff in testifying in his own behalf to answer the question whether he had not threatened defendant's life two days before the filing of the information.

3. ———: **INSANITY: PROBATE COURT: INFORMATION: JUDICIAL ACTION.** Upon the filing of an information as to the mental unsoundness of a citizen of the county, the probate court has jurisdiction to inquire into the matter, and, if satisfied of the propriety thereof, to issue his warrant for the arrest and detention of such party; and in so doing the court acts judicially and a warrant so issued, though improvident and wrongful, protects the informant against an action for false imprisonment.

4. ———: **MALICIOUS PROSECUTION: REMEDY: COSTS.** The remedy of one who is unjustly imprisoned is by recovery of costs which may be awarded him, or the redress afforded by some statute or by action for malicious prosecution. (Authorities cited and distinguished.)

5. ———: ———: **ACTION.** No action for false imprisonment lies against one who in good faith files his information with the probate judge touching the sanity of a citizen of the county. There must be *mala fides* or the proceeding must be a sham.

6. ———: ———: **HUNG JURY: DISMISSAL.** The fact that an informant, after the disagreement of a jury as to the sanity of the person informed against, requested a dismissal of the proceeding, is of little or no importance in the absence of other facts showing *mala fides*.

Appeal from Nodaway Circuit Court.—*Hon. Gallatin Craig*, Judge.

REVERSED AND REMANDED.

*W. C. Ellison* and *E. A. Vinsonhaler* for appellant.

(1) Defendant Snyder and his partner Wilson had a right, under the allegations in their affidavit, to apply to the probate judge for the apprehension of Dougherty. If he was furiously mad, and threatening to kill Snyder and destroy the property of both, then clearly it was within the power of the probate judge to "cause such insane person to be apprehended and employ any person to confine him or her in some suitable place until the probate court shall make further orders therein." Revised Statutes 1899, sec. 3695. (2) No bonds in such a case can be taken, and when, as here, plaintiff asked for a continuance and was placed in charge of his father-in-law, the judge acted judicially and was only doing what the statute plainly required. So in regard to Snyder's complaint to the sheriff. It was no more than a request of the officer to keep in his custody the plaintiff Dougherty; and such request resulted in nothing further than the officer was bound to do under his warrant. Every step was under the warrant—no restraint except such as was required by it was imposed. (3) Even malicious motives, or want of probable cause, do not give a party arrested an action for false imprisonment. (4) The warrant is a complete protection in this case and plaintiff's instruction No. 3 is clearly error. (5) The court is referred to rulings on the evidence offered as to insanity of plaintiff and his threat to kill Snyder. To exclude this evidence and then submit the issue to the jury is so clearly error as to require no citations.

*C. A. Anthony* for respondent.

(1) The defendant seeks to justify under section 3695. "It is elementary law that one who would justify

himself under a statute must pursue the statute.'' Lock
v. Dean, 11 Am. R. 327; McCasky v. Garrett, 91 Mo.
App. 354; Monson v. Rouse, 86 Mo. App. 101; Cox v.
Osage County, 103 Mo. 390. Indeed, if this were not
so, the statute would be unconstitutional. Smith v.
People, 65 Ill. 375, 379. (2) Appellant seems to argue
that if a person in any kind of a case has any kind of a
warrant issued, he must be prosecuted for malicious
prosecution and harshly refers to Finley v. Refrigerator
Co., 99 Mo. 559. ''It makes no difference whether the
restraint of the person is caused without process, or
under color of process wholly illegal.'' Ahern v. Col-
lins, 39 Mo. 150; Fellows v. Goodman, 49 Mo. 63; Mon-
son v. Rouse, 86 Mo. App. 97; McCaskey v. Garrett, 91
Mo. App. 354; Boeger v. Langenburg, 97 Mo. 396;
Cooley on Torts (1 Ed.), p. 177. (3) The warrant not
authorized by law, the defendant not only had affidavit
filed with Judge Tate but demanded the warrant, di-
rected the arrest, complained that the officer did wrong
in letting Dougherty go with Mr. Cramer, had the sher-
iff go to Cramer's, keep surveillance over Dougherty
through the night, objected to his release next day, em-
ployed an attorney to conduct a trial unknown to law—
certainly these facts not only make Snyder liable but
show a spirit of persecution. Knowles v. Bullene, 71
Mo. App. 341; Bissell v. Gold, 19 Am. 484, 490; Mc-
Caskey v. Garrett, 91 Mo. App. 354; Floyd v. State, 12
Ark. 43; 54 Am. Decisions 252, note page 259; Vene-
man v. Jones, 118 Ind. 41; 10 Am. St. 100; Monson v.
Rouse, 86 Mo. App. 101, 103; Bonesteel v. Bonesteel, 28
Wis. 253; Schell v. Leland, 45 Mo. 294; Wise v. Loring,
54 Mo. App. 264; Bath v. Metcalf, 145 Mo. App. 214;
1 Am. State Rep. 455. (4) To establish his case plain-
tiff is only required to show the imprisonment, and that
done, it devolves upon the defendant to prove that he
was justified. Floyd v. State, 54 Am. Dec. 252. (5) It
certainly can not be the law of Missouri that any
man may treat a person whom he claims ''furiously
mad'' as a criminal, cause his arrest at his place

of business, drag him from his home and family, expose and humiliate him and not be liable. And the statute certainly never intended to give the power to any one to treat him as a criminal. The proceedings in probate court to have him adjudged a lunatic and incapable of managing his affairs are in their character civil proceedings. The notice takes place of a summons. Crow v. Meyersink, 88 Mo. 411; State v. Baird, 47 Mo. 301-304; Kiehns v. Wessel, 53 Mo. App. 669; Rafael v. Vervelft, 2 Wm. Blackstone 987; Smith v. People, 65 Ill. 375, 378.

SMITH, P. J.—This is an action which was brought to recover damages for a wrongful arrest and detention. The petition was in two counts. At the trial there was a finding by the jury on the second for plaintiff, but none whatever on the first. This under our practice, was in effect a finding for the defendant on the latter; but as the plaintiff has made no complaint as to that and has not appealed that count, and the proceedings relating to the trial on it are not now in any way before us for review, it need not be further noticed. In the second it was alleged that the defendant unlawfully and wrongfully arrested and caused the arrest and detention of the plaintiff, etc.

The answer alleged that defendant, in good faith filed before M. G. Tate, the judge of the probate court, an information stating that plaintiff was so far disordered in his mind as to endanger his own person and property and the person and property of others. "That defendant is informed and believes that upon said affidavit said judge of the probate court did issue a warrant for the apprehension of said plaintiff upon said grounds so alleged and that the imprisonment complained of in the petition was for the acts of the officer, sheriff and his deputies, under said warrant and that defendant in no other way interfered therein."

It appears from the very meagre abstract of the record presented that the plaintiff had been confined in a lunatic asylum for some form of insanity and had so

far recovered that he had been discharged and later on had engaged in a mercantile business. The defendant and another filed an information before the probate judge of the county stating that the plaintiff herein was a resident of the county, having a large amount of property therein, and was and for some time past had been so far disordered in his mind as to endanger his own person and the person and property of others. It was also further stated that at a certain time and place the said plaintiff had threatened to take the life of the defendant and to destroy his property.

It further appears. that the probate judge before whom the said information ·was filed, being satisfied there was good cause for the exercise of his jurisdiction, issued a warrant for the apprehension and restraint of plaintiff until the alleged information could be inquired into by a jury. The said plaintiff was immediately apprehended under the warrant by the sheriff and placed in the care and custody of his father-in-law where he remained until there was an inquiry by a jury in the said probate court touching the truth of the allegations made by the defendant in said information so filed before the judge of said court. The jury, it seems, after hearing the evidence produced before it, were unable to agree. The said plaintiff upon the motion of the defendant was discharged. It further appears that while the plaintiff was in charge of the sheriff under the warrant, that defendant suggested to him that he ought not to let him (plaintiff) go out of his charge, and that in his opinion it would be necessary to put handcuffs on him.

During the progress of this case the plaintiff, who was a witness in his own behalf, testified that his feelings towards the defendant were none the best. The defendant inquired of him whether or not he had not at a certain time (two days before the information was filed) and place, in the presence of a certain person— naming him—threatened the life of the defendant? On objection of plaintiff's counsel he was not permitted to answer. It seems to us that this was a proper question

and that the plaintiff should have been allowed to answer it. Evidence of the kind called for by defendant's question tended to show the defendant's good faith in filing the information, and for that reason we think it was admissible.

The information and the issue of the writ for the apprehension of plaintiff was authorized by sections 3650, 3651, 3694, 3695, Revised Statutes 1899. The plaintiff's cause of action is based on the illegality of his arrest and detention, and since it clearly appears from the evidence that the arrest and detention was made in due course of regular proceedings of the probate court—a court having complete jurisdiction of the subject-matter of the information—how could an action for false imprisonment or for "illegal and wrongful arrest and detention" be maintained in such case?

The facts stated in the information to the probate judge were unquestionably sufficient, under the statutes already referred to, to give that officer jurisdiction. Said probate judge could not issue the writ without being first satisfied that there was good cause for the exercise of his jurisdiction. In issuing the writ he acted judiciously and made a judicial determination. It was the result of regular judicial action of a judicial officer having jurisdiction upon the facts presented to him by the information to issue it. A warrant issued under such circumstances, even though improvidently and wrongfully, protects against an action for false arrest and imprisonment the person who instigated it. This exemption is founded on public policy and is applicable alike to civil and criminal proceedings, that persons may be induced freely to resort to the courts and judicial officers for the enforcement of their rights and the remedy for their grievances without the risk of undue punishment for their own ignorance of the law, or for the errors of courts and judicial officers.

The remedy of one who is unjustly arrested or imprisoned, or both, is by the recovery of the costs which may be awarded him, or the redress which some statute may afford him, or by an action for malicious prosecu-

tion, in case the prosecution against him has been from unworthy motives and without probable cause. Finley v. Refrigerator Co., 99 Mo. 559; Marks v. Townsend, 97 N. Y. 590; Fischer v. Langbein, 103 N. Y. 84; Carman v. Emerson, 71 Fed. Rep. 264; Williams v. Smith, 14 C. B. (N. S.) 596; Chrisman v. Carney, 33 Ark. 321. This case is not analogous to that of Fellows v. Goodman, 49 Mo. 63, where there was an arrest upon an affidavit before a justice of the peace charging the defendant therein with maliciously injuring a building. In an action for false imprisonment against the person who made the affidavit for the arrest, it was shown that the proceeding was a sham, though made under the forms of the law was *mala fide,* and it was held that an action for false imprisonment could be maintained in such case.

Nothing has been discovered in the record of the present case which tends in the least to show that the proceeding before the probate court was a sham or that it was *mala fide.* The plaintiff and the defendant resided in the same village, and the former had just been released from an insane asylum and had threatened the life of the latter. Taking all the facts and circumstances together which the evidence discloses and the clear inference to be deduced therefrom is that the defendant acted in the utmost good faith in setting on foot the inquiry into the mental condition of the plaintiff. It seems to us that the record is barren of any evidence tending to show the proceeding was *mala fide,* or a sham.

Nor is this case like Ahern v. Collins, 39 Mo. 150, for there the arrest and detention was not under a writ which was the result of regular judicial action by a judicial officer having jurisdiction, while here it was. And the arrest and detention in that case was made on process, so that there is no similarity between the two cases in any of their essential features. As was said by us in Monson v. Rouse, 86 Mo. App. loc. cit. 102: "In order to make a case of false imprisonment, malice and want of probable cause are not necessary ingredients. There may be false imprisonment without the

existence of malice or want of probable cause. These are necessary in law for malicious prosecution but not for false imprisonment." The case then before us was that where the warrant under which the defendant was arrested and detained was unauthorized and illegal, so that it is not in point here.

If the defendant believed the plaintiff was so far disordered in his mind as to endanger his own person or the person or property of others, he was authorized, both under the statute already referred to and at common law (Bishop's Non-Contract Law, section 510), to give the information of that fact to the probate judge of the county to the end that the fact be inquired into by a jury; and for giving this information and for the action of the probate judge in issuing the warrant and for the apprehension of plaintiff and his detention until the inquiry could be made, an action for *false imprisonment* can not be maintained unless he acted in the steps he took in that direction *mala fide,* or unless the proceeding thus instituted was a *sham.*

This is an action for false arrest and imprisonment and not for malicious prosecution, and no good reason is seen for the refusal by the trial court of the defendant's instruction telling the jury that under the pleadings and evidence the verdict should be for defendant.

It may not be out of place to say that while the warrant issued by the probate judge was not in the best form, yet we observe nothing in any part of it that rendered it illegal or that resulted in any special injury to plaintiff.

Nor do we discover anything in the action of the defendant in requesting the proceeding to be discontinued that is worth while to be noticed. It may have been that the inquiry into the mental condition of the plaintiff by the jury had the effect to convince defendant's mind that he was in error as to the truth of the facts stated by him in the information, and for that reason he felt it to be his duty to discontinue the proceeding. His action did not necessarily show his bad faith in the proceeding, or that it was a sham. We at-

tach little or no importance to the discontinuance in the absence of more evidence.

Without noticing other points suggested in briefs of counsel, it is sufficient to say that the judgment, which was for plaintiff, was for the wrong party and must be reversed and the cause remanded. All concur.