(92 N. W. Rep. 809.)

---

## RICHMIRE *vs.* ANDREWS & GALE ELEVATOR CO.

---

**Appeal from Justice—Notice.**

> On an appeal from a judgment in justice's court the notice may properly be served on the adverse party, instead of the attorney appearing on the trial in justice's court. The provisions of section 6625, Code Civ. Proc., are not applicable in such cases.

**Judgment Notwithstanding Verdict.**

> Under chapter 63 Laws 1901, it is not error to direct the entry of judgment notwithstanding the virdict, when it is established by the evidence, as a matter of law, that the verdict should have been directed, and it further appears from the evidence that it is not probable that a different state of facts would be shown on another trial, and a different result reached, than that reached by directing judgment, notwithstanding the verdict.

Appeal from district court, Cass county; *Pollock,* J.

Action by Willis Richmire against the Andrews & Gage Elevator Company. Judgment for defendants, and plaintiff appeals.. Affirmed.

*J. F. Callahan* and *Morrill & Engerud,* for appellant.

*S. G. More* and *Robert M. Pollock,* for respondent.

MORGAN, J. This is an action for damages for the conversion of

a certain number of bushels of flax. The plaintiff worked for the person who farmed the lands as a farm laborer, and on November 14, 1900, filed a lien for his services from August 28 to November 12, 1900, for the sum of $136. It is admitted that the lien, as filed, is regular, and complies with all the provisions of Chapter 84, Revised Codes 1899, Civ. Code, under which such a lien may be filed. The answer to the complaint was a general denial and an affirmative defense of payment. The action was commenced in justice's court. Plaintiff recovered in that court. The defendant appealed to the district court, and in so doing served the notice of appeal on the plaintiff personally, and not on the attorney who had appeared for the plaintiff in justice's court. In district court the plaintiff moved to dismiss the appeal on the ground that the appeal papers should have been served on the attorney of record of the plaintiff, and not on the plaintiff personally. This motion was denied by the district court. The plaintiff excepted to that ruling, and the same is assigned as error in this court. Section 6771, Rev. Codes, provides that notice of appeal shall be served on the adverse party or his attorney. Section 6625, Rev. Codes, provides as follows: "The provisions of the Code of Civil Procedure shall govern the proceedings in justices' courts as far as applicable, when the mode of procedure is not prescribed by this Code, but the powers of justices' courts are only as herein prescribed." Section 5732, Code Civ. Proc., provides that when a party shall have an attorney in the action the service of papers shall be made on the attorney, instead of the party. Under these provisions it is claimed that section 6625, supra, must govern, and that service upon the party of the appeal notice is not any service that will confer jurisdiction on the appellate court. We cannot concur in this conclusion. We think that section 6625, quoted, conclusively points to an opposite conclusion. It is only when the provisions of the justices' court are silent on any matter that the provisions of section 6625 shall govern, if applicable. So far as the justices' court act lays down the procedure, that act governs, and is the law to be applied. If the justices' court act did not specify upon whom appeal papers should be served on an appeal to the district court, then section 6625 might govern. This, it seems to us, is the plain reading of that section. It says that the provisions of the Code of Civil Procedure shall apply "when the mode of procedure is not prescribed by this Code," referring, of course, to the Justices' Code. *Weimmer* v. *Sutherland*, 74 Cal. 341, 15 Pac. Rep. 849.

The next assignment, and the only other assignment or question raised in the case, specifies error by the district court in granting defendant's motion for judgment notwithstanding the verdict of the jury. At the close of the plaintiff's direct testimony, and at the conclusion of taking the testimony in the case, the defendant moved for a directed verdict, and both motions were overruled. The case was then submitted to the jury, with instructions to find a general verdict and to answer special interrogatories. They found a general verdict

for the plaintiff and answers to the special interrogatories. The defendant, immediately on the receiving of the verdict, moved upon the minutes of the court for judgment in its favor notwithstanding the verdict of the jury, on the same grounds contained in the motion for a directed verdict. The motion was granted, an exception saved, judgment of dismissal of the action ordered, and such judgment was duly entered. The appeal to this court is from such judgment. The motion for judgment notwithstanding the verdict was made on the same grounds as the motion for a directed verdict, and is, in substance, as follows: That plaintiff has failed to make out a cause of action, and for the further reason that the flax was delivered at defendant's elevator by the plaintiff as the agent of the owners without disclosing that he had any lien thereon, and therefore waived any lien thereon; and that defendant shipped the flax out of the state in consequence of such delivery by the plaintiff. The motion for judgment was made under chapter 63, Laws 1901. So far as material, that law is as follows: "In all cases where, at the close of the testimony in the case tried, a motion is made by either party to the suit requesting the trial court to direct a verdict in favor of the party making such motion, which motion was denied, the trial court on motion made that judgment be entered notwithstanding the verdict, or on motion for a new trial, shall order judgment to be entered in favor of the party who was entitled to have a verdict directed in his or its favor, * * * whenever it shall appear from the testimony that the party was entitled to have such motion granted." This statute has introduced a practice in the trial of causes not hitherto found in any statute of the state. It is allied to the practice under the common law of ordering judgment non obstante veredicto. Under the common law such judgments could originally have been granted in plaintiff's favor only, and only in cases where the plea confessed the cause of action, and set up matters in avoidance that were insufficient, and not a defense or bar. Later the rule was extended so that such judgments could be applied for and entered in favor of defendants when the plaintiff's pleadings were insufficient to sustain a judgment in his favor. Such a judgment could not be entered in any cases where the pleadings stated a good cause of action or a valid defense. Such a judgment would not be entered in cases of defective pleadings, but only in cases where the cause of action or defense was without merit in whatever form pleaded. Before such a judgment would be entered, the defense or cause of action must be defective in matter of substance, and beyond the power of amendment. 2 Enc. Pl. & Prac. p. 912, and cases cited. This statute is taken from Minnesota, and is there enacted as chapter 320, Laws 1895. The law has frequently been construed by the supreme court of that state, and it is there held that such judgment will not be granted when it appears that a person has a good cause of action or defense, which has not been supported by reason of technical defects in the evidence, which may be supplied on another trial (*Cruikshank* v. *Insurance Co.,* 77

N. W. Rep. 958); that it is not sufficient ground to warrant such judgment that the evidence was such that the trial court, in its discretion, ought to have granted a new trial. And that such judgment can be granted only in cases where it is clear upon the whole record that the moving party is entitled to judgment as a matter of law (*Marquardt* v. *Hubner,* 80 N. W. Rep. 616); that such a judgment will not be given when there is evidence reasontbly tending to support the verdict rendered (*Bragg* v. *Railway Co.,* 83 N. W. Rep. 511). See, also, *Merritt* v. *Railway Co.,* 84 N. W. Rep. 321. This statute having been construed by the supreme court of Minnesota before its enactment here, the construction placed thereon is binding upon this court, as the construction of it by the courts of the state from which it is taken is deemed to have become a part of the statute as enacted in this state.

We will now consider the evidence with a view of determining whether the district court was warranted in granting the motion under such evidence. The plaintiff worked for one Childs, who farmed the land as a tenant of one Swang, who owned the land. Before the crop was harvested, Mrs. Miller became entitled to claim Childs' interest in the crop under a mortgage from Childs. On October 22d the plaintiff marketed one load of flax at the defendant's elevator as the agent and at the request of Mrs. Miller. He received the cash for this flax, and turned it all over to Mrs. Miller. Later, and before November 10th, he hauled four more loads of flax as such agent, and left the same, as he claims, at the elevteor, without selling it. The elevator agent claims that these four loads were sold absolutely, but not paid for on delivery; that tickets showing price and weights were delivered to the plaintiff for these four loads. These tickets the plaintiff turned over to Mrs. Miller. During the delivery of the last load—and it was incidentally mentioned before—the plaintiff told the agent that he had a "labor bill that he must have satisfied out of the flax." The plaintiff also told the agent not to pay Swang or any one else until his claim was satisfied, and the agent promised not to do so. At the time these four loads were delivered at the elevator, nothing was said by the agent or by the plaintiff tending in any way to show that the flax was to be kept separate from other flax, or that it was not to be shipped in the ordinary course of business. When the last load of the flax was delivered at the elevator, Mr. Swang had notified the agent not to pay anybody but himself for this flax, and the plaintiff also notified the agent not to pay any one until his claim for labor lien was settled. The agent said that he would not pay anybody until they had settled their rights to the pay for the flax, as he must protect himself and his company. Subsequently Swang indemnified the company, and he was paid for the four loads, and the plaintiff was refused payment, after demand made for it. Swang was paid on November 15th. The plaintiff filed his lien on November 14th. Under the statute giving farm laborers a right to a lien on crops for labor performed in cultivating such crop, no lien attaches or is acquired until the claim

for a lien is filed, as therein prescribed, in the office of the register of deeds. The statute gives the right to such lien, but none is acquired until such filing. It may be filed within 10 days from the termination of the labor contract. After such filing, the lien attaches from that date, but does relate back. At the time of the delivery of this flax, and during all the conversations wherein the plaintiff told the agent not to pay anybody until his claim was settled, the plaintiff had no lien, and no right whatever to the possession of the flax for himself. He was the custodian of the flax until delivered as the employe of the owner. The owner was alone then entitled to the possession. The delivery to the elevator company was made by the owner through the plaintiff. The plaintiff then had not the possession of it as and for himself. Nor had he any lien on it. The last of the flax was delivered on November 10th, without any promise or agreement that it should be kept separate, or not shipped to the general market. Under the usual course of business of elevator companies, it was immediately mingled with other flax, and soon shipped to market. The agent testified that this flax was shipped out of the state very soon after its receipt, and that there was not a bushel of the flax in the elevator at the time the lien was filed. If it had been shipped out of the state, or mingled with other flax in the elevator, before the lien was filed, the lien could not attach, and the plaintiff therefore never had the right to take possession of the flax under his lien while in the possession of the defendant, or at any other time. The defendant, therefore, is not guilty of converting the flax to its own use when covered by the palintiff's lien. It cannot, therefore, be held in damages for converting it to its uses. The lien must have attached to the flax before the defendant is liable. "It is well settled that no action for conversion can be maintained unless the plaintiff shows a special or general ownership in the property converted, and possession, or the legal right to immediate possession, at the time of the conversion." *Parker* v. *Bank,* 3 N. D. 87, 84 N. W. Rep. 313. The owner had not put this flax into plaintiff's possession as a recognition of his right to a lien thereon, but did so that he might sell the same for her. He delivered it at the elevator for her, and turned over to her the memoranda received from the elevator company. Until the lien was filed, the plaintiff could have no lien on the flax. The promise of the agent that he would settle with the plaintiff did not establish a lien in plaintiff's favor, and there was no agreement or request that the flax was to be held in the elevator until a lien was filed and the lien acquired. A conversion of the flax on which the palintiff had an existing lien has not been shown. The failure of proof is in matters of substance—the nonexistence of any lien on the flax. This defect is not such a one that it seems probable that a different showing can ever be made or made on another trial. There was no error in granting the motion for judgment.

The judgment is affirmed. All concur.